[No. 17011. Department One. April 5, 1922.]

## W. F. JAHN & COMPANY, *Respondent,* v. PUYALLUP & SUMNER FRUIT GROWERS CANNING COMPANY, *Appellant.*[1]

SALES (75)—PERFORMANCE OF CONTRACT—INSPECTION AND APPROVAL—FRAUD—EVIDENCE—SUFFICIENCY. A buyer having the privilege of calling for inspection at the point of delivery, its acceptance of and payment for cars of hay without such inspection affords no support for a charge of fraud in the certificate of inspection issued at point of shipment.

SALES (42)—CONTRACT—MODIFICATION — EVIDENCE — SUFFICIENCY. A written contract for the sale of hay, subject to the rules of an exchange permitting twenty per cent inferior grade to be tendered, is not modified by correspondence between the parties in which the seller, after several shipments had been rejected by the buyer, gave assurance that the balance of the hay would be satisfactory to the buyer and that the contract would be completed with No. 1 hay.

Appeal from a judgment of the superior court for King county, Hill, J., entered May 20, 1921, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Wm. C. Eatough* and *M. F. Porter,* for appellant.

*Roberts & Skeel* and *J. J. Geary,* for respondent.

[1]Reported in 205 Pac. 833.

TOLMAN, J.—Respondent, as plaintiff, brought this action to recover from appellant damages for the breach of a contract to purchase certain alfalfa hay. From a judgment against it for the full amount claimed, appellant has appealed.

The contract, which is in writing, provides for the purchase by appellant of one thousand tons of number one alfalfa hay at $23 per ton, f. o. b. cars Grandview, Washington, subject to Seattle Merchants Exchange rules. "Terms: Draft attached to Bill of Lading, and Grade Certificate." Shipments under this contract were begun in due time, but grade certificates were not furnished with the earlier shipments. Appellant, having contracted the hay to its customers, caused the cars to be diverted and delivered direct to such customers. Complaint was made as to the quality of the hay received, inspections were made at receiving points, and much of the hay found to be under grade. Satisfactory adjustment was made as to some, a number of cars were rejected by appellant, and the return thereof accepted by respondent. After repeated protests as to the quality of the hay, on August 14, 1920, appellant telegraphed respondent as follows:

"We have at Sumner three cars very poor hay two cars that look good at door but we find some of your cars have first class hay at door and rotten hay further back  One car contains fifty-seven bales that would not grade anything  To repeat our former notice you have cancelled your contract with us by failing to comply with conditions of same."

To which respondent replied by letter of August 17, 1920:

"With reference to the four or five cars of hay that have reached Sumner, which were not satisfactory. We have instructed our man to go down to Sumner and rebill the cars back to Seattle; also to call on you and

show you the exact memo we received from our shippers, stating that the cars were represented to us to be choice hay.

"We have notified our agent not to send any more of the Satus hay on your contract, as we would fill the balance of it from other points in the Yakima Valley.

"We are very sorry that this hay turned out as it did, and can assure you that the balance to complete the contract will be thoroughly inspected and satisfactory to you, and we will be glad to allow you credit for any additional expense you have been put to."

Appellant answered by wire of August 18, 1920:

"If you desire to fill your hay contract with us immediately with first class hay we are willing to accept Shipments from you to date have hurt our business seriously  Desire to treat you more than fair but if you send any more cars of poor hay entire contract must be cancelled  Wire us what we can expect  Must have hay quickly if you are going to ship."

and on the same day respondent replied:

"We will complete your contract with number one hay and have placed orders for immediate shipment to fill all your orders filed with us to date."

Thereafter deliveries continued until October 12, 1920, without further trouble, but on that date a car was received which, according to appellant's inspection, was below grade.  It was rejected and appellant then undertook to cancel the contract, and refused to accept further shipments because of the quality of the hay theretofore delivered.  There remains undelivered of the one thousand tons contracted for 522.54 tons, and respondent, after due notice, sold this remainder for the best price obtainable and sued for the difference, plus expenses, which, by the judgment entered below, it recovered.

Appellant presents two questions here: (1) were the certificates of inspection fraudulently issued? and

(2) was the contract modified by the letters and telegrams which we have quoted?

We have read the record with care and find therein ample support for the finding of the trial court that, while the earlier shipments were made without inspection and certificate, the buyer had the privilege of calling for inspection at the point of delivery, and its acceptance of and payment for these cars leaves nothing in dispute as to them and affords no support for the charge of fraud. As to the remainder of the shipments which were received by appellant, there is not sufficient evidence that the inspectors did not exercise good faith and honest judgment, and when it is considered that the Seattle Merchants Exchange rules, made a part of the contract, permit twenty per cent of inferior grade to be tendered, it cannot be said that the certificates or any of them were fraudulently issued.

Appellant sought, by trial amendments of its answer, to plead that the contract as originally written was modified, the part relating to the Seattle Merchants Exchange rules eliminated, and a new contract made to the effect that the hay furnished should be satisfactory to the buyer. The refusal of the trial court to permit this amendment is assigned as error. We cannot read the correspondence as establishing, or in any wise bearing out, the defense sought to be predicated thereon. The parties had theretofore agreed upon and signed a written contract, complete in its provisions, and as we read the correspondence, it means nothing more than that the seller thereby promises strict compliance with the already existing contract upon its part, and expressed the opinion that the buyer would be satisfied with the results.

Finding no error, the judgment is affirmed.

PARKER, C. J., MITCHELL, and BRIDGES, JJ., concur.